FILED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

2011 FEB -9 AM 11:09

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | | |
|---|---|---|
| ROX ANN COCHRAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **Case No.:** 3:11CV 054 JD |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| | ) | **FOR VIOLATION OF THE** |
| RICHARD M. LAVERS, WILLIAM P. | ) | **FEDERAL SECURITIES LAWS,** |
| JOHNSON, EDWIN MILLER, GEOFFREY | ) | **AND FOR VIOLATION OF** |
| BLOOM, MATTHEW SANFORD, JOHN | ) | **STATE LAW BREACHES OF** |
| GOEBEL, FABIAN DE ARMAS, ALL | ) | **FIDUCIARY DUTY** |
| AMERICAN GROUP, INC., H.I.G. ALL | ) | |
| AMERICAN, LLC, ALL AMERICAN | ) | **JURY TRIAL DEMANDED** |
| GROUP HOLDINGS, LLC, and ALL | ) | |
| AMERICAN ACQUISITION | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, by her attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

1.    Plaintiff brings this class action on behalf of the public stockholders of All American Group, Inc. ("All American Group" or the "Company") against All American Group's Board of Directors (the "Board" or the "Individual Defendants") and All American Group's controlling stockholder, H.I.G. All American, LLC ("H.I.G."), seeking equitable relief for their violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), and for their breaches of fiduciary duties arising out of H.I.G.'s attempt to squeeze out the minority shareholders of the Company and

purchase the Company by means of an unfair process and for an unfair price pf $0.20 per share (the "Proposed Transaction").

2.      On November 8, 2010, H.I.G. and the Company announced a definitive agreement (the "Merger Agreement") under which H.I.G., through its affiliates All American Group Holdings, LLC and All American Acquisition Corporation, will acquire all of the outstanding shares of All American Group now already owned H.I.G. $0.20 per share in cash. H.I.G. is the Company's controlling stockholder and owns approximately 55.7% of the outstanding common stock of the Company.

3.      The Board has breached their fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. The Proposed Transaction consideration of $0.20 per share is grossly inadequate and represents an attempt by H.I.G. to squeeze out the minority shareholders of the Company at an unfair price and at the most opportune time. H.I.G. is attempting to grab All American Group at a time when the stock price of the Company is trading at historically low levels. In fact, the Company's common stock traded at $0.59 per share as recently as August 2010, and traded at over $1.40 per share in April 2010.  In addition, the book value of the Company is $0.91 per share, more than four times the amount of the Proposed Transaction consideration of $0.20 per share.  In fact, the special committee formed to review H.I.G.'s offer believed that $0.80 per share was a fair value for the common stock of the Company held by the Company's minority shareholders.

4.      H.I.G. is attempting to use the Company's recent liquidity concerns to purchase the Company at an unfairly low price. As described in more detail below, while the Company found possible alternatives to solve their liquidity issues, H.I.G., as controlling stockholder, used

their power and influence over the Company to ensure that the Company could not exercise such alternatives, and was forced to enter into the Proposed Transaction on H.I.G.'s terms.

5.      Indeed, two of the Company's directors voted against approval of the Proposed Transaction believing that the Proposed Transaction consideration was not adequate. Specifically, Robert Deputy ("Deputy"), who has been a director of the Company since 1998 and is a member of the special committee, voted against approval of the Merger Agreement because he believed that All American Group "had other alternatives, not agreed to by [H.I.G.] that would have resulted in a greater return to the [Company's minority shareholders] than the Merger." In addition, as stated in the Registration Statement, Deputy also "gave credibility to management's projections that indicated that AAG could return to profitability in 2011 if AAG had access to credit." Both the alternatives that Deputy believed would provide greater return to the Company's shareholders, as well as the projections referred to here have not been disclosed in the Registration Statement. Donald Hudler ("Hudler"), who has been a director of the Company since 1999, also voted against approval of the Merger Agreement. Hudler believed that "H.I.G. All American had acted throughout the process…in its own best interests and to the detriment of the other shareholders of AAG."

6.      In addition, on December 17, 2011, the Company filed a Form S-4 Registration Statement, as amended on January 21, 2011 (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement fails to provide the Company's shareholders with material information and provides them with materially misleading information thereby rendering the shareholders unable to cast an informed vote regarding the Proposed Transaction.

7.    The Individual Defendants and H.I.G. have breached their fiduciary duties to the Plaintiff and the other minority shareholders of the Company.   Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Rule 14a-9. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

9.    Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District.   In addition, All American Group maintains its principal executive offices in Indiana.

## PARTIES

10.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of All American Group.

11.    All American Group is a corporation organized and existing under the laws of the State of Indiana. It maintains its principal corporate offices at 2831 Dexter Drive, Elkhart, Indiana, 46514. All American Group, formerly known as Coachmen Industries, Inc., is one of America's premier systems-built construction companies under the All American Homes®, Mod-U-Kraf®, and All American Building Systems™ brands, as well as a manufacturer of specialty vehicles. All American Group is a publicly held company with its stock quoted and traded on the over-the-counter markets under the ticker COHM.PK.

12.    Defendant Richard M. Lavers ("Lavers") has served as the President and CEO of All American Group since August 2006 and a member of the Board since 2007. Lavers first joined the Company as General Counsel in 1997, and later was elevated to Executive Vice President, General Counsel and Secretary, as well as Acting Chief Financial Officer and Chief

4

Administrative Officer. In 2005, Lavers became the Chief Financial Officer and Chief Administrative Officer.

13. Defendant William P. Johnson ("Johnson") has been the Chairman of the Board of the Company since 2006.

14. Defendant Matthew Sanford ("Sanford") has been a director of the Company since 2009. Sanford has been a Managing Director for H.I.G. Capital, LLC since 2000.

15. Defendant Fabian de Armas ("Armas") has been a director of the Company since 2009. de Armas is a principal with H.I.G. Capital, LLC since 2005.

16. Defendant Edwin Miller ("Miller") has been a director of the Company since 1998.

17. Defendant Geoffrey Bloom ("Bloom") has been a director of the Company since 1999.

18. Defendant John Goebel ("Goebel") has been a director of the Company since 2006.

19. Defendants referenced in ¶¶ 12 through 18 are collectively referred to as Individual Defendants and/or the Board.

20. Defendant H.I.G. All American, LLC is the Company's controlling stockholder owning 20,483,865 shares of All American Group's common stock, which equates to approximately 55.7% of the Company's common stock entitled to vote on the Proposed Transaction. H.I.G. is a Delaware limited liability company, and is an affiliate of H.I.G. Capital, LLC.

21. Defendant All American Group Holdings, LLC is a Delaware limited liability company and is an affiliate of H.I.G.

5

22.     Defendant All American Acquisition Corporation is an Indiana corporation wholly owned by All American Group Holdings, LLC that was created for the purposes of effectuating the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

23.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of All American Group and owe them, as well as the Company, a duty of care, loyalty, good faith, candor, and independence.

24.     To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

25.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)     participating in any transaction where the Individual Defendants' loyalties are divided;

(b)    participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

26.    Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

27.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to plaintiff and other public shareholders of All American Group.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of All American Group common stock and their successors in interest, except Defendants and their affiliates (the "Class").

29.    This action is properly maintainable as a class action for the following reasons:

(a)    the Class is so numerous that joinder of all members is impracticable. As of January 31, 2011, All American Group has approximately 36.75 million shares outstanding.

(b)    questions of law and fact are common to the Class, including, inter alia,

the following:

(i)    Have the Individual Defendants and H.I.G. misrepresented and omitted material facts in violation of Section 14(a) of the Exchange Act;

(ii)   Have the defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)  Have the defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

(iv)   Have the defendants breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(v)    Have the defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(vi)   Whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(vii)   Is the Class entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

(c)   Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)   Plaintiff's claims are typical of those of the other members of the Class.

(e)   Plaintiff has no interests that are adverse to the Class.

(f)   The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)   Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)   Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy

## FURTHER SUBSTANTIVE ALLEGATIONS

30.   All American Group is one of America's premier systems-built construction companies under the All American Homes®, Mod-U-Kraf®, and All American Building Systems™ brands. The Company produces system-built modules for single-family residences, multi-family duplexes, apartments, condominiums, hotels and specialized structures for military use. In addition, the Company has a Specialty Vehicle business, which currently consists of the

manufacture of a line of low floor buses compliant with the Americans and Disability Act under the Spirit of Mobility brand name.

31.     H.I.G. is the Company's controlling stockholder, owning 20,483,865 shares of All American Group's common stock, which represents approximately 55.7% of the outstanding common stock of the Company entitled to vote on the Proposed Transaction. In addition, H.I.G. is the Company's principal secured creditor. Specifically, on October 27, 2009, the Company completed a two-year $20.0 million loan agreement as borrowers with H.I.G. for $10.0 million of senior secured revolving notes and $10.0 million of convertible debt. This loan agreement was collateralized by substantially all of the assets of the Company.

32.     In a press release dated November 8, 2010, the Company announced that it had entered into a merger agreement with H.I.G. pursuant to which H.I.G., through All American Group Holdings, LLC and All American Acquisition Corporation, will acquire the remaining outstanding shares of the Company not already owned by H.I.G. for $0.20 per share.

33.     In addition, upon closing of the Proposed Transaction, the Company's Specialty Vehicle business will be offered for sale. If an agreement is entered into for the sale of the Specialty Vehicle business within nine months after the closing of the merger, the excess of the net sale proceeds over $5 million will be deposited in the liquidating trust for distribution to the former All American Group shareholders pro rata. However, as stated in a press release announcing the Proposed Transaction, All American Group "*cannot give assurance that the sale of the assets will be completed within the 9 months' time frame or that it will bring a sufficient amount of net sale proceeds to provide the shareholders any additional consideration*." Moreover, the Merger Agreement provides that the surviving corporation will not be required to

sell the Specialty Vehicle business unless the net proceeds from the sale are greater than $12 million.

34.     The Proposed Transaction consideration of $0.20 per share is grossly inadequate and represents an attempt by H.I.G. to squeeze out the minority shareholders of the Company at an unfair price and at the most opportune time. As can be seen in the chart below, H.I.G. is attempting to grab All American Group at a time when the stock price of the Company is trading at historically low levels. In fact, the Company's common stock traded at $0.59 per share as recently as August 2010, and traded at over $1.40 per share in April 2010.  On August 31, 2010, the Company's stock price traded at $0.30 per share. On September 9, 2010, after the Company's stock price had dropped to $0.16 per share the previous day, H.I.G. presented an indication of interest to the Company to purchase all the remaining shares of the Company not currently owned by H.I.G. for between $0.13 to $0.17 per share.



**ALL AMERICAN GROUP**
COHM.PK

35.     Moreover, H.I.G. is attempting to use the Company's recent liquidity concerns to purchase the Company at an unfairly low price. In August 2010, All American Group failed to meet certain financial covenants in its loan agreement with H.I.G. On October 21, 2010, H.I.G. delivered to All American Group a notice of default under the loan agreement.  In addition, during this time, the Company needed to secure a bond to support a housing contract award in Denver, Colorado.

36.     While the Company had found possible alternatives to solve their liquidity issues, H.I.G., as controlling stockholder, used their power and influence over the Company to ensure that the Company could not exercise such alternatives.

37.     For example, as stated in the Registration Statement, on November 3, 2010, the Company received "a written non-binding indication of interest to purchase all of [H.I.G.'s] Common Shares, repay certain secured debt and accrued interest owed to [H.I.G] in the amount of approximately $12 million, provide sufficient capital for [All American Group]'s business, including the bond necessary for the housing project in Colorado and the Specialty Vehicles business, plus $4 million and an earn-out based on the net profits of the Specialty Vehicles business for 2011 and 2012."   H.I.G. informed the Company that it had no interest in the proposal.  As further stated in the Registration Statement, "certain Board members expressed both surprise and concern that H.I.G. All American would reject an apparent return for its investment in AAG, while unwilling to provide additional funding under the revolving credit agreement, making it difficult to alleviate AAG's liquidity issues."

38.     H.I.G. was unwilling to allow the Company to consummate any transaction that would have solved their liquidity concerns. H.I.G. advised the Company that, absent the execution of a definitive agreement to affect the Proposed Transaction, H.I.G. was unwilling to

provide additional credit or other financial or credit support to the Company would declare default under the loan agreement with the Company. As further stated in the Registration Statement:

> In addition to the alternative of remaining a public company, the Special Committee considered alternatives to the Merger, such as entering or acquiring strategically complementary businesses or pursuing other strategic transactions with third parties, but determined that such alternatives were not reasonably available given that they believed that H.I.G. All American, which has a security interest in the assets of AAG, had expressed its unwillingness to finance other strategic transactions.

39.     In addition, the Board and the special committee failed to adequately inform themselves of the value of the Company before agreeing to approve the Proposed Transaction. The special committee retained Houlihan Lokey Financial Advisors, Inc. ("Houlihan Lokey") to render a fairness opinion, but Houlihan Lokey failed to perform any financial analyses of All American Group whatsoever, whether relative to other companies or transaction in relevant industries, or based on the Company's discounted cash flows. Rather, as stated in the Registration Statement, Houlihan Lokey relied upon the liquidation analysis prepared by All American Group management in determining that the Proposed Transaction was fair. Accordingly, the Proposed Transaction must be enjoined until the Board and the Company's shareholders receive adequate financial analyses that are necessary to make an informed decision on the fairness of the Proposed Transaction.

40.     What is even more disturbing is that had Houlihan Lokey conducted various financial analyses, it likely would have yielded that the Proposed Transaction consideration was unfair. As stated in the Registration Statement, "Houlihan Lokey noted that, under the ownership of a company with adequate liquidity and capital, the value of AAG could substantially improve,

13

resulting in significant returns to such an owner if a business combination or such other strategic transaction such as the Merger were consummated."

41.     Moreover, the book value of the Company is $0.91 per share, more than four times the amount of the Proposed Transaction consideration of $0.20 per share.

42.     On November 2, 2010, defendant Johnson, a member of the special committee formed to review H.I.G.'s offer, informed H.I.G. that the special committee believed that $0.80 per share was a fair value for the common stock of the Company held by the Company's minority shareholders.

43.     Moreover, two of the Company's directors voted against approval of the Proposed Transaction believing that the Proposed Transaction consideration was not adequate. Specifically, Mr. Deputy, who has been a director of the Company since 1998 and is a member of the special committee, voted against approval of the Merger Agreement because he believed that All American Group "had other alternatives, not agreed to by [H.I.G.] that would have resulted in a greater return to the [Company's minority shareholders] than the Merger." In addition, as stated in the Registration Statement, Deputy also "gave credibility to management's projections that indicated that AAG could return to profitability in 2011 if AAG had access to credit." Both the alternatives that Deputy believed would provide greater return to the Company's shareholders, as well as the projections referred to here have not been disclosed in the Registration Statement.

44.     Mr. Hudler, who has been a director of the Company since 1999, also voted against approval of the Merger Agreement. Hudler believed that "H.I.G. All American had acted throughout the process…in its own best interests and to the detriment of the other shareholders of AAG."

45.     While the Company's minority stockholders are being cashed out at an unfair price, the minority shareholders do not even have a say as to whether the Merger Agreement will be approved. The vote of the Company's minority stockholders to approve or reject the Proposed Transaction has been rendered meaningless. Pursuant to the Merger Agreement, the merger must be approved by the "affirmative vote of the majority of the outstanding shares" of common stock. Accordingly, as stated in the Registration Statement, with H.I.G. holding a majority of the Company's common stock, "shareholder approval of the merger agreement and the Merger is assured." In order to protect the Company's minority public shareholders from H.I.G.'s unfair squeeze out, the Merger Agreement must be amended to include a "majority of the minority" voting provision that will cause the Merger Agreement to be approved only if a majority of the Company's minority public shareholders unaffiliated with All American Group vote to approve the Merger Agreement.

46.     In addition, defendant Lavers, the Company's Chief Executive Officer, will become the President of All American Group after the effective time of the merger, and Ms. Colleen Zuhl, the Company's Chief Financial Officer, will become the Vice President and Treasurer of All American Group after the effective time of the merger.

***The Materially Misleading and Incomplete Registration Statement***

47.     The Registration Statement, as amended on January 21, 2011 fails to provide the Company's shareholders with material information and provides them with materially misleading information thereby rendering the shareholders unable to cast an informed vote regarding the Proposed Transaction.

*Disclosures Concerning The Company's Projections*

48.    The Registration Statement only discloses the projections of the Company prepared by Company management that assumed that All American Group's liquidity problems would not be resolved. However, Company management also prepared projections of the Company that assumed that the Company would solve its liquidity problems. As stated in the Registration Statement, on October 15, 2010, the special committee reviewed financial projections of the Company that had been prepared by the Company management that assumed, among other things, that "(i) that certain public costs would be eliminated, (ii) that bonding capacity and working capital would be available for major projects on reasonable terms, (iii) that chassis financing would not be an obstacle to meeting the specialty vehicle sales projections, (iv) that no significant non-operating expenses would be incurred, (v) a modest recovery in the housing markets, (vi) that there would be a base of production-ready backlog to start the year, and (vii) that certain other reductions in costs and improvements in profitability would be achieved." These projections must be disclosed so that shareholders can properly assess the true value of the Company. These projections are all the more important considering Houlihan Lokey "noted that, under the ownership of a company with adequate liquidity and capital, the value of AAG could substantially improve, resulting in significant returns to such an owner if a business combination or such other strategic transaction such as the Merger were consummated."

*Disclosures Concerning The Liquidation Analysis Conducted By The Company's Management*

49.    With Houlihan Lokey failing to conduct any financial analyses of the Company, the only type of financial analysis relied upon by the Board was the liquidation analysis prepared by Company management. The Company's management conducted a liquidation analysis of the Company where it calculated the amount that would be available to the Company's shareholders upon completion of an orderly liquidation. As stated in the Registration Statement, in performing

16

the liquidation analysis, the Company "discounted the book values as of September 30, 2010 of AAG's assets by approximately 0% to 98.1% depending on asset type, which percentages reflected management's assessments as to the portion of the book value of such assets that management believed would not be recovered in an orderly liquidation." The Registration Statement must disclose the criteria and assumptions used by the Company management to select the various liquidation value adjustments made to the Company's various assets in calculating the liquidation value of each such asset. For example, management made a 52.2% liquidation value adjustment to the Company's "Cash & Cash Equivalents," but fails to disclose the reasons for selecting such a low liquidation percentage for the Company's most liquid assets in an orderly liquidation, assets that are, or are readily convertible, to cash.

*Disclosures Concerning The Reasons Deputy and Hudler Voted Against The Proposed Transaction*

50.   As stated in the Registration Statement, in voting against approval of the Merger Agreement, Deputy believed that All American Group "had other alternatives, not agreed to by H.I.G. All American, that would have resulted in a greater return to the Minority Shareholders than the Merger. Mr. Deputy also gave credibility to management's projections that indicated that AAG could return to profitability in 2011 if AAG had access to credit." Both the alternatives that Deputy believed would provide greater return to the Company's shareholders, as well as the projections referred to here have not been disclosed in the Registration Statement.

51.   In addition, the Registration Statement states that "each of Mr. Deputy and Mr. Hudler concluded that the Merger Consideration was not adequate," but fails to disclose the factors and analyses relied upon by Deputy and Hudler in reaching this determination, as well as what value did Deputy and Hudler believe would be adequate consideration.

*Disclosures Concerning Houlihan Lokey's Relationship With H.I.G. and All American Group*

52.     The Registration Statement states that "Houlihan Lokey and certain of its affiliates in the past provided or currently provide investment banking, financial advisory and other financial services to AAG, H.I.G. Capital, other participants in the Merger and/or their respective affiliates, and/or one or more security holders or portfolio companies of such entities, for which Houlihan Lokey and such affiliates have received or may receive compensation, including, among other things, having provided or currently providing certain valuation advisory services to AAG and/or H.I.G. Capital and certain of its affiliates and portfolio companies." The Registration Statement must disclose what services were performed or are currently being performed by Houlihan Lokey for H.I.G. and All American Group, as well as the amount of compensation received, or to be received for such services.

53.     In addition, the Registration Statement states that "Houlihan Lokey and certain of its affiliates and their respective employees may have committed to invest in private equity or other investment funds managed or advised by H.I.G. Capital or other participants in the Merger or certain of their respective affiliates or security holders, and in portfolio companies of such funds, and may have co-invested with such funds, H.I.G. Capital or other participants in the Merger or certain of their respective affiliates or security holders, and may do so in the future." The Registration Statement must disclose what investments or investment commitments were made by Houlihan Lokey to such funds referred to above.

54.     The Registration Statement should also disclose whether the special committee considered hiring other financial advisors other than Houlihan Lokey.

*Disclosures Concerning Events Leading Up To Announcement of the Proposed Transaction*

55.     The Registration Statement also:

18

(a)    Fails to disclose the reasons the Board determined on September 13, 2010 that H.I.G.'s indication of interest "should be seriously considered."

(b)    Fails to disclose the "various methods that H.I.G. All American could employ to accomplish the transaction" that was discussed by the special committee on October 11, 2010.

(c)    Fails to disclose the criteria used to select the four parties that were contacted by defendant Johnson in October 2010 to seek their interest in a transaction with the Company, as well as the reasons only four parties were contacted.

(d)    Fails to disclose the "options potentially available" to All American Group that was discussed by the special committee on October 15, 2010.

(e)    Fails to disclose the "status of [defendant Johnson's] discussions with a strategic buyer" that was discussed at the October 18, 2010 meeting.

(f)    Fails to disclose the "materially higher price per share for the shares issued to it by AAG" that H.I.G. believed that a potential investor was offering to purchase from the Company.

(g)    States that on November 2, 2010, "Sanford reiterated that H.I.G. All American's final proposal was $0.20 per share plus an earn-out based on the sale of the Specialty Vehicles business," but fails to disclose when H.I.G. first improved their proposal to $0.20 per share and included an earn-out.

(h)    Fails to disclose the criteria used to select the 36 parties that were contacted by All American Group beginning in late 2008, how many of the 36 parties were strategic parties and how many were financial buyers, the value of the four indications of interest that were received during that process, as well as the value of the two revised proposals.

56.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     The Defendants have issued the Registration Statement with the intention of soliciting shareholder support of the Proposed Transaction.

59.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

60.     Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts and is materially misleading, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have know that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

**COUNT II**
**Breach of Fiduciary Duties**
**(Against All Individual Defendants)**

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of All American Group and have acted to put their personal interests ahead of the interests of All American Group shareholders.

64.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of All American Group because, among other reasons:

        (a)     they failed to take steps to maximize the value of All American Group to its public shareholders and took steps to avoid competitive bidding;

        (b)     they failed to properly value All American Group; and

        (c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

65.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting All American Group's shareholders. As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

66.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of All American Group's assets and will be prevented from benefiting from a value-maximizing transaction.

67. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

68. Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### Breach of Fiduciary Duties
### (Against H.I.G.)

69. Plaintiff repeats all previous allegations as if set forth in full herein.

70. As controlling stockholder of the Company, H.I.G. owes fiduciary duties to Plaintiff and the other public minority stockholders of the Company.

71. H.I.G. has knowingly and recklessly and in bad faith violated fiduciary duties owed to the public shareholders of All American Group and have acted to put their personal interests ahead of the interests of All American Group shareholders.

72. In addition, the fiduciary duties of H.I.G. require them to disclose to Plaintiff and the Class all information material to the decisions confronting All American Group's shareholders. As set forth above, H.I.G. has breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

73. As a result of H.I.G.'s breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of All American Group's assets and will be prevented from benefiting from a value-maximizing transaction.

74. Unless enjoined by this Court, H.I.G. will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

75. Plaintiff and the Class have no adequate remedy at law.

## COUNT IV
### Aiding and Abetting
**(Against All American Group, All American Group Holdings, LLC and All American Acquisition Corporation)**

76.     Plaintiff repeats all previous allegations as if set forth in full herein.

77.     As alleged in more detail above, Defendants All American Group, All American Group Holdings, LLC and All American Acquisition Corporation, aided and abetted the Individual Defendants' and H.I.G.'s breaches of fiduciary duties.

78.     As a result, Plaintiff and the Class members are being harmed.

79.     Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representative and her counsel as Class counsel;

(B)     declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

23

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Respectfully submitted,

PRICE WAICUKAUSKI & RILEY, LLC

Brad A. Catlin (Atty. No. 21570-29)
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN  46204
(317) 633-8787
Fax:  (317) 633-8797
bcatlin@price-law.com


LEVI & KORSINSKY, LLP
Joseph Levi, Esq.
Eric M. Andersen, Esq.
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171